UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| VENICE PI, LLC, HEADHUNTER, LLC, MON LLC, COOK PRODUCTIONS, LLC, COLOSSAL MOVIE PRODUCTIONS, LLC, CLEAR SKIES NEVADA, LLC, BODYGUARD PRODUCTIONS, INC., I.T. PRODUCTIONS, LLC, COBBLER NEVADA, LLC, JUSTICE EVERYWHERE PRODUCTIONS, INC., GLACIER FILMS 1, LLC, MILLENNIUM FUNDING, INC., TBV PRODUCTIONS, LLC,<br><br>        Plaintiffs,<br><br>  vs.<br><br>GALBATROSS TECHNOLOGIES, LLP, HIMANSHU SAXENA, GAURAV JAGGI,<br><br>        Defendants. | CIV. NO. 18-00192 LEK-RT |

**ORDER DENYING PLAINTIFFS' RENEWED APPLICATION FOR
ENTRY OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

On August 16, 2019, Plaintiffs Venice PI, LLC; Headhunter LLC; MON LLC; Millennium Funding, Inc.; TBV Productions, LLC; Cook Productions, LLC; Glacier Films 1, LLC; Colossal Movie Productions, LLC; Clear Skies Nevada, LLC; Bodyguard Productions, Inc.; I.T. Productions, LLC; Cobbler Nevada, LLC; and Justice Everywhere Productions, Inc. ("Plaintiffs") filed, *ex parte*, their Renewed Application for Entry of Temporary Restraining Order and Preliminary Injunction

("Motion").[1]  [Dkt. no. 87.]  On September 5, 2019, Plaintiffs filed a supplemental memorandum in support of the Motion.  [Dkt. no. 90.]  The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").  The Motion's request for a TRO is hereby denied for the reasons set forth below.

**BACKGROUND**

Some of the current Plaintiffs, along with other entities, initiated this action on May 23, 2018.[2]  [Complaint (dkt. no. 1).]  The operative pleading is Plaintiffs' Second Amended Complaint, filed on December 5, 2018.  [Dkt. no. 54.]  Plaintiffs each own one or more copyrights to various motion pictures listed in the Second Amended Complaint (collectively "the Works").  [Id. at ¶ 8.]  "Each of the Works are motion pictures currently offered for sale in commerce."  [Id. at ¶ 90.]  Plaintiffs allege Defendants Galbatross Technologies, LLP ("Galbatross"); Himanshu Saxena ("Saxena"); Gaurav Jaggi ("Jaggi"); DOE 5, doing business as

---

[1] In light of the denial of the Motion's request for a temporary restraining order ("TRO"), the Court will reserve ruling on the portion of the Motion seeking a preliminary injunction until the completion of service.

[2] A First Amended Complaint was filed on August 13, 2018. [Dkt. no. 26.]

2

show-box.en.uptodown.com/android ("Doe 5"); Rajat Kulshrestha ("Kulshrestha"); Ipathy Srinivas Rao ("Rao"), and Monitu Bansal ("Bansal" and collectively "Defendants") utilize the Show Box software application ("Show Box app") to engage in "massive piracy of" the Works. [Id. at pg. 1.] According to Plaintiffs, "Defendants misleadingly promote the Show Box app as a legitimate means for viewing content to the public, who eagerly install the Show Box app to watch copyright protected content, thereby leading to profit for the Defendants." [Id. at ¶ 1.] Plaintiffs bring this action pursuant to the United States Copyright Act of 1976, as amended ("Copyright Act"), 17 U.S.C. § 101, *et seq.* [Id. at ¶ 2.] Plaintiffs allege the following claims: contributory copyright infringement, based on the inducement of third parties to stream the Works ("Count I"); contributory copyright infringement, based on the inducement of third parties to torrent the Works ("Count II"); contributory copyright infringement, based on Defendants' material contribution to the infringement upon Plaintiffs' rights under the Copyright Act ("Count III"); and direct copyright infringement ("Count IV").

Plaintiffs and Rao stipulated to a consent judgment, [filed 12/28/18 (dkt. no. 63),] and Plaintiffs also did so with Doe 5 – who was identified as Lahoucine Ikous, [filed 2/1/19 (dkt. no. 66),] Bansal, [filed 2/1/19 (dkt. no. 67),] and

Kulshrestha, [filed 5/23/19 (dkt. no. 78)]. Thus, the only defendants remaining in this action are Galbatross, Saxena, and Jaggi ("Remaining Defendants"). Plaintiffs have made multiple attempts to effectuate service upon the Remaining Defendants, but have been unsuccessful. See, e.g., Submission of Report of Service per Hague Convention of Def. Pebblebridge Technologies, LLP,[3] filed 12/12/19 (dkt. no. 98) (documents showing that attempted service on Galbatross at a Business Park address in India was unsuccessful); Decl. of Stephanie Kessner, filed 7/17/19 (dkt. no. 85) (with documents showing that attempted service on Jaggi at a Green Park address in India, in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"), was unsuccessful); summons returned unexecuted, filed 5/7/19 (dkt. no. 75) (similar Hague Convention documents as to attempted service upon Saxena at a Green Park address in India).[4] A new summons was issued for service upon Jaggi at a residential address in Gurgaon, India, [Summons in a Civil Case, filed 9/17/19 (dkt. no. 93),] but no return has been filed.

---

[3] The title of the document erroneously refers to another entity, but the text of the document refers to Galbatross.

[4] The Saxena service documents do not have an declaration of counsel like the one filed with the Jaggi service documents.

Plaintiffs previously filed two ex parte motions for authorization to utilize alternate service of process for the Remaining Defendants, but both motions were denied. [Ex parte motion, filed 5/23/19 (dkt. no. 79) ("5/23/19 Motion"); ex parte motion, filed 7/10/19 (dkt. no. 84) ("7/10/19 Motion"); order denying 5/23/19 Motion, filed 6/28/19 (dkt. no. 83) ("6/28/19 Order"); order denying 7/10/19 Motion, filed 8/30/19 (dkt. no. 89) ("8/30/19 Order").]

In the instant Motion, Plaintiffs seek a TRO requiring:

> the registrar NameCheap, Inc. to immediately lock the following domains associated with [the Remaining Defendants] to prevent [them] from transferring said domains to a registrar outside of the United States:
>
> galbatross.com; show-box.one; showboxmediagroup.org; showboxme.com; showboxforpcguide.com; showboxcomputer.com; showboxapp.me; showboxapkdownloads.com; showboxandroid.com; showbox360.com; downloadshowboxapps.com; downloadshowboxapp.co; app-showbox.com; showoxforpc.me; showboxforpc.xyz; showboxforpc.me; showboxforpc.io; showboxforpc.download; forpcdownload.com; downloadshowbox.co; downloadshowbox.app; cinemaboxhdi.com; cinemabox-hd.com; terrariumtv.org; terrariumtv.net; terrarium-tv.com[.]

[Motion at 1-2.]

## **DISCUSSION**

The requirements to obtain a TRO or a preliminary injunction are well-established. See Winter v. Nat'l Res. Def.

5

Council, Inc., 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." (citations omitted)); Washington v. Trump, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (per curiam) ("the legal standards applicable to TROs and preliminary injunctions are substantially identical" (citation and internal quotation marks omitted)). Further, under very limited circumstances, a district court may grant a plaintiff's request for a TRO without notice to the defendant. See Fed. R. Civ. P. 65(b)(1); Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). However, some threshold issues must be addressed before the requirements for a TRO can be examined.

I. **Service**

Plaintiffs assert they have completed service upon the Remaining Defendants by email, in accordance India's law regarding service - Order V, Rule 20(1) of the Code of Civil Procedure 1908 - and this satisfies Fed. R. Civ. P. 4(f)(2)(A). [Suppl. Mem. at 27 (citing Motion, Decl. of Sanjay Aggarwal

6

("Aggarwal Decl.") at ¶¶ 7-11; Motion, Decl. of Counsel at ¶ 2).[5]]  Rule 4(f) states:

> **Serving an Individual in a Foreign Country.**
> Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served at a place not within any judicial district of the United States:
>
>> (1)  by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>>
>> (2)  if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>>
>>> (A)  as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>>
>>> (B)  as the foreign authority directs in response to a letter rogatory or letter of request; or
>>>
>>> (C)  unless prohibited by the foreign country's law, by:
>>>
>>>> (i)  delivering a copy of the summons and of the complaint to the individual personally; or
>>>>
>>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

---

[5] Sanjay Aggarwal is a licensed attorney in India. [Aggarwal Decl. at ¶ 2.]

7

>             (3) by other means not prohibited by
>             international agreement, as the court
>             orders.

Thus, service can be effected pursuant to Rule 4(f)(2) only where there is no international agreement regarding service or where an international agreement exists, but it "does not specify other means."

> India became a signatory to the Hague Convention, effective August 1, 2007. In so doing, India prohibited service through channels including mail and private process servers and instead required foreign plaintiffs to effect service through the Central Authority of India. See Tuckerbrook Alt. Invs., LP v. Banerjee, 754 F. Supp. 2d 177, 181-82 (D. Mass. 2010).

Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1295-96 (Fed. Cir. 2012). Galbatross is believed to be a partnership under India law. [Second Amended Complaint at ¶ 10.] Saxena and Jaggi are believed to be residents of India who are Galbatross's partners. [Id. at ¶ 12.] Plaintiffs are therefore required to effectuate service on the Remaining Defendants through the Central Authority of India. Plaintiffs have attempted to do so, but those efforts have been unsuccessful. See, e.g., dkt. nos. 75, 85, 98 (cited *supra*). A district court has discretion to authorize alternate service methods upon parties in a foreign country, even if the country is a signatory to the Hague Convention, and service by email of a defendant in India has been permitted. See, e.g., Sadis & Goldberg, LLP v. Banerjee,

No. 14-CV-913-LTS, 2017 WL 1194476, at *2–3 (S.D.N.Y. Mar. 30, 2017), vacated on other grounds, 715 F. App'x 99 (2d Cir. 2018). However, Plaintiffs' requests for authorization to utilize alternative service methods have been denied. See supra discussing the 6/28/19 Order and the 8/30/19 Order.

Plaintiffs' assertion that they have completed service upon the Remaining Defendants pursuant to Rule 4(f)(2)(A) is therefore rejected.

## II. Personal Jurisdiction

A TRO can only be issued if personal jurisdiction over the Remaining Defendants exists. See Price v. City of Stockton, 390 F.3d 1105, 1117 (9th Cir. 2004) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." (citation and quotation marks omitted)).

### A. Federal Long-Arm Statute

Plaintiffs first argue this Court has jurisdiction pursuant to Fed. R. Civ. P. 4(k), also known as the federal long-arm statute. [Mem. in Supp. of Motion at 28.] Rule 4(k) states:

> **Territorial Limits of Effective Service.**
>
> **(1) In General.** Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:

9

> (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;
>
> (B) who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or
>
> (C) when authorized by a federal statute.
>
> **(2) Federal Claim Outside State-Court Jurisdiction.** For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Neither Rule 4(k)(1) nor Rule 4(k)(2) applies because Plaintiffs have not served a summons on, nor obtained a waiver of service from, any of the Remaining Defendants. Personal jurisdiction pursuant to Rule 4(k) is therefore unavailable at this time.

    B.   <u>Hawai`i Long-Arm Statute and Due Process Analysis</u>

Plaintiffs also argue personal jurisdiction exists pursuant to the Hawai`i long-arm statute, Haw. Rev. Stat. § 634-35. [Mem. in Supp. of Motion at 25-26.] The § 634-35 analysis is the same as the Fifth Amendment due process analysis.

10

> The district court considers two factors
> before exercising personal jurisdiction over a
> nonresident defendant in a diversity of
> citizenship case: "(1) whether an applicable
> state rule or statute potentially confers
> jurisdiction over the defendant; and (2) whether
> assertion of such jurisdiction accords with
> constitutional principles of due process." Flynt
> Distrib. Co. v. Harvey, 734 F.2d 1389, 1392 (9th
> Cir. 1984). "The jurisdictional inquiries under
> state law and federal due process merge into one
> analysis" when, as here, the state's long-arm
> statute is "co-extensive with federal due process
> requirements." Roth v. Garcia Marquez, 942 F.2d
> 617, 620 (9th Cir. 1991).[6] See Cowan v. First
> Ins. Co. of Hawaii, 61 Haw. 644, 649, 608 P.2d

---

[6] Subject matter jurisdiction in the instant case is not based on diversity jurisdiction, but federal question jurisdiction and patent, copyright, and trademark jurisdiction. [Second Amended Complaint at ¶ 3.] The personal jurisdiction analysis is the same, except that Fifth Amendment due process rights are implicated.

> In a "federal question case [in which] a
> federally created right is at issue, we examine
> due process in light of the fifth amendment
> rather than the fourteenth amendment." Dakota
> Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d
> 1384, 1389 n.2 (8th Cir. 1991). Although this is
> a federal question case, the Fourteenth Amendment
> is also involved in that determining whether
> personal jurisdiction is present requires
> examining the forum state's long-arm statute.
> Genetic Implant [Sys., Inc. v. Core-Vent Corp.],
> 123 F.3d [1455,] 1458 [(Fed. Cir. 1997)].
> Hawaii's long-arm statute permits personal
> jurisdiction to the full extent permitted by the
> Fourteenth Amendment. The due process inquiry in
> this case therefore concerns the protections
> provided by the Due Process Clauses of both the
> Fifth and Fourteenth Amendments, collapsing into
> a single inquiry.

Kowalski v. Anova Food, LLC, Civ. No. 11-00795 HG-RLP, 2012 WL 3308884, at *5 n.1 (D. Hawai`i Aug. 10, 2012) (some alterations in Kowalski).

11

394, 399 (1980) (Hawaii's long-arm statute, Haw. Rev. Stat. § 634-35, was adopted to expand the jurisdiction of Hawaii's courts to the extent permitted by the due process clause of the Fourteenth Amendment).  Accordingly, personal jurisdiction over [the defendant] depends on federal due process requirements.

The Due Process Clause protects a person's "liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).  The Due Process Clause requires that defendants have "certain minimum contacts with [Hawaii] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe, 326 U.S. at 316, 66 S. Ct. 154; Data Disc, Inc. v. Systems Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977).  The minimum contacts required mean that the defendant must have purposefully availed itself of the privilege of conducting activities within the foreign jurisdiction, thereby invoking the benefits and protections of the foreign jurisdiction's laws.  See Asahi Metal Indus. Co. v. Sup. Court of Cal., Solano County, 480 U.S. 102, 109, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987).  In applying Due Process Clause requirements, courts have created two jurisdictional concepts — general and specific jurisdiction.

A court may exercise general jurisdiction over the defendant when the defendant is a resident or domiciliary of the forum state, or the defendant's contacts with the forum state are continuous, systematic, and substantial.  Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); Data Disc, 557 F.2d at 1287 . . . .

> Specific jurisdiction, on the other hand, may be found when the cause of action arises out of the defendant's contact or activities in the forum state. See Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991); Data Disc, 557 F.2d at 1287. . . .

Barranco v. 3D Sys. Corp., 6 F. Supp. 3d 1068, 1077-78 (D. Hawai`i 2014) (some alterations in Barranco) (some citations omitted).

### 1. General Jurisdiction

First, nothing in the Second Amended Complaint indicates that any of the Remaining Defendants either: 1) is a resident or domiciliary of the State of Hawai`i, or 2) has contacts with Hawai`i that are so "continuous, systematic, and substantial" that general jurisdiction is warranted. See Helicopteros, 466 U.S. at 416. Therefore, general jurisdiction over the Remaining Defendants is lacking.

### 2. Specific Jurisdiction

> [The Ninth Circuit] employ[s] a three-part test to determine if a defendant has sufficient minimum contacts to be subject to specific personal jurisdiction:
>
> > (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.
>
> Brayton Purcell [LLP v. Recordon & Recordon], 606 F.3d [1124,] 1128 [(9th Cir. 2010)] (internal quotation marks omitted). As [the plaintiff] bears the burden of establishing the district court's jurisdiction over [the defendant], it must satisfy the first two prongs. If it does so, then [the defendant] must come forward with a "'compelling case' that the exercise of jurisdiction would not be reasonable." CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

Washington Shoe Co. v. A-Z Sporting Goods, Inc., 704 F.3d 668, 672 (9th Cir. 2012) (footnote and some citations omitted).[7]

---

[7] In light of Walden, Brayton Purcell and Washington Shoe have been abrogated as to the "individualized targeting" theory. Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1070 (9th Cir. 2017) ("Following Walden, we now hold that while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what Walden requires."). "A theory of individualized targeting alleges that a defendant 'engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" Id. at 1069 (quoting Washington Shoe, 704 F.3d at 675). The "individualized targeting" theory does not apply in this case because the Second Amended Complaint does not allege any Plaintiff is a Hawai`i resident.

14

### a. **Purposeful Direction**

"Purposeful direction requires a defendant to have (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) causing harm that the defendant knows is likely to be suffered in the forum state." Lazar v. Kroncke, 862 F.3d 1186 (9th Cir. 2017) (brackets, citations, and internal quotation marks omitted). In analyzing whether a defendant purposefully directed his activities at the forum state, the district court must focus upon "the relationship between the defendant, the forum, and the litigation." Brennan v. Hawaii, CIV. NO. 17-00163 HG-RLP, 2017 WL 3187215, at *4 (D. Hawai`i July 26, 2017) (citing Walden v. Fiore, 134 S. Ct. 1115, 1126 (2014)). Under the Walden analysis, "the relationship must arise out of contacts that the defendant **himself** creates with the forum State," and the court must "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." 571 U.S. 277, 284-85, 134 S. Ct. at 1122 (emphasis in Walden) (citations and internal quotation marks omitted).

Plaintiffs generally allege the Remaining Defendants "have placed hundreds of individuals in Hawaii if not thousands of individuals in the United States in legal peril for copyright infringement." [Second Amended Complaint at ¶ 1.] Plaintiffs specifically allege James Sosa, Kazzandra Pokini, Chenie A.

Horcajo, Keith Norton, and Margaret Burrows, each of whom is a Hawai`i resident, utilized the Show Box app, while he or she was in Hawai`i, to access one or more of the Works. [Id. at ¶¶ 110-12, 115-17.] In addition, two internet protocol ("IP") addresses in Hawai`i were allegedly utilized by an unnamed individual (or by unnamed individuals) to use the Show Box app, while in Hawai`i, to access one of the Works. [Id. at ¶¶ 113-14.] These are merely contacts with persons who reside within Hawai`i; they do not constitute contacts with Hawai`i itself. Under the Walden analysis, such contacts are insufficient to establish purposeful direction.

Plaintiffs submitted an email to their counsel from Saxena, dated November 2, 2018, in which Saxena admits that showboxappdownload.co previously belonged to him, Jaggi, and Galbatross, but they sold and transferred it. [Second Amended Complaint, Exh. 5.] Plaintiffs therefore argue the Remaining Defendants "have admitted to operating the interactive website for distributing and promoting the interactive software program Show Box app." [Mem. in Supp. of Motion at 26.] Plaintiffs assert that "'operation of an interactive, commercial website is often sufficient' to establish personal jurisdiction." [Id. (quoting Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997)).] First, Plaintiffs overstate the holding of Cybersell. The Ninth Circuit stated: "Courts that have

16

addressed interactive sites have looked to the 'level of interactivity and commercial nature of the exchange of information that occurs on the Web site' to determine if sufficient contacts exist to warrant the exercise of jurisdiction." Cybersell, 130 F.3d at 418 (some citations omitted) (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (finding purposeful availment based on Dot Com's interactive web site and contracts with 3000 individuals and seven Internet access providers in Pennsylvania allowing them to download the electronic messages that form the basis of the suit)). The Ninth Circuit also noted "advertisement or solicitation for sale of goods and services on the Internet" was insufficient, and "'something more' [is required] to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." Id. Plaintiffs have not established the "something more" showing that the Remaining Defendants purposefully directed their activity in a substantial way to Hawai`i. Nor have Plaintiffs shown the type of extensive website contacts with Hawai`i that existed in Zippo Manufacturing. Thus, even apart from the Walden analysis, Plaintiffs have not identified the type of contacts with Hawai`i that would be sufficient to establish purposeful direction under Cybersell.

Plaintiffs have not established that the Remaining Defendants either purposefully directed their activities to Hawai`i or that they purposefully availed themselves of the privileges of conducting business in Hawai`i.

### b. Other *Washington Shoe* Prongs

The second Washington Shoe prong requires that the plaintiff's claim arise out of the defendant's forum-related activities. 704 F.3d at 672. This factor is not met because the Remaining Defendants do not have forum-related activities. Based on the available record, the Remaining Defendants merely had contacts with persons within forum.

The third Washington Shoe prong requires that the exercise of jurisdiction over the defendant be reasonable. Id. Exercising jurisdiction over any of the Remaining Defendants would be unreasonable because Plaintiffs have not established the first two prongs of the analysis.

This Court therefore concludes that it does not have specific jurisdiction over any of the Remaining Defendants under the minimum contacts analysis, *i.e.* under either the Hawai`i long-arm statute or the due process analysis.

### C. Summary

There is no basis for personal jurisdiction over the Remaining Defendants. Even if Plaintiffs established all of the requirements, a TRO could not be issued at this time. Thus, it

18

is not necessary to determine whether Plaintiffs have established the TRO requirements.

## CONCLUSION

On the basis of the foregoing, Plaintiffs' Renewed Application for Entry of Temporary Restraining Order, filed August 16, 2019, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, December 31, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**VENICE PI, LLC, ET AL. VS. GALBATROSS TECHNOLOGIES, LLP, ET AL; CV 18-00192 LEK-RT; ORDER DENYING PLAINTIFFS' RENEWED APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**